1  LYNNE C. HERMLE (STATE BAR NO. 99779)
2  lchermle@orrick.com
   Orrick, Herrington & Sutcliffe LLP
3  1000 Marsh Road
   Menlo Park, CA  94025
4  Telephone:  650-614-7400
   Facsimile:   650-614-7401
5
   SARA E. DIONNE (STATE BAR NO. 221326)
6  sdionne@orrick.com
   ANDREA L. BROWN (STATE BAR NO. 237629)
7  abrown@orrick.com
   Orrick, Herrington & Sutcliffe LLP
8  400 Capitol Mall, Suite 3000
   Sacramento, CA 94815
9  Telephone:  1-916-329-7922
   Facsimile:   1-916-329-4900
10
   Attorneys for Defendant
11 HOME DEPOT, U.S.A., INC.

12            UNITED STATES DISTRICT COURT

13           CENTRAL DISTRICT OF CALIFORNIA

14

15 ARECELI MENDOZA and KYLE          Case No.  CV 09-5843 SJO (JCx)
   DIAMOND, individually and on behalf of
16 themselves and all others similarly situated,   **DEFENDANT HOME DEPOT'S**
                                      **OPPOSITION TO**
17            Plaintiff,              **PLAINTIFFS' MOTION FOR**
                                      **CLASS CERTIFICATION**
18       v.
                                      **DATE:  JANUARY 11, 2010**
19 HOME DEPOT, U.S.A., INC., a Delaware   **TIME: 10:00 A.M.**
   corporation, and DOES 1-50 inclusive,   **ROOM:  880**
20
              Defendant.
21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page

I.  INTRODUCTION ...........................................................................1

II.  STATEMENT OF FACTS ..............................................................3

    A.  Home Depot Assistant Store Managers ................................3

    B.  Assistant Store Manager Training........................................4

    C.  Plaintiffs Araceli Mendoza and Kyle Diamond ..................6

    D.  Assistant Store Manager Hours ...........................................7

III.  PLAINTIFFS CANNOT SATISFY THEIR RULE 23 BURDEN ................8

    A.  Plaintiffs' Legal Burden Precludes Certification..................8

    B.  Plaintiffs Cannot Satisfy The Requirements of Rule 23(b)(3)..............8

        1.  Individual Issues Predominate Over Common Issues ...............8

            a.  An "Exempt Policy" Argument Does Not Apply Here........9

            b.  Each ASM Has A Different Training Experience......... 10

                (1)  The Executive Exemption Requires An Individualized Inquiry ......................... 11

                (2)  The Administrative Exemption Also Requires An Individualized Inquiry.................... 12

                (3)  Under The Wage Orders, The Fact Finder Must Analyze The Exemptions Must Be Analyzed By Week............................... 13

            c.  The Salary Basis Test Is Met .............................. 13

    C.  Plaintiffs Have Not Shown A Class Action Is Superior ................... 15

    D.  Plaintiffs Lack Standing to Seek Certification Under Rule 23(b)(2)................ 16

    E.  Plaintiffs Cannot Satisfy the Requirements of Rule 23(a)................ 17

        1.  Plaintiffs Fail To Show Commonality ................................... 17

        2.  Plaintiffs Are Neither Adequate Nor Typical Representatives Of The Class ........................... 17

    F.  Plaintiffs' Class Definitions are Defective......................... 20

IV.  CONCLUSION........................................................................ 20

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

*B.C.* v. *Plumas United School District*,
   192 F.3d 1260 (9th Cir, 1999) ...................................... 16

*Daniels* v. *City of N.Y.*,
   198 F.R.D. 409 (S.D.N.Y. 2001) .................................. 20

*Gary Plastic Packaging Corp.* v. *Merrill, Lynch, et al.*,
   903 F.2d 176 (2d Cir. 1990).......................................... 8

*Hagen* v. *City of Winnemucca*,
   108 F.R.D. 61 (D. Nev. 1985)....................................... 20

*Hanon* v. *Dataproducts Corp.*,
   976 F.2d 497 (9th Cir. 1992) ........................................ 17

*Lerwill* v. *Inflight Motion Pictures, Inc.*,
   582 F.2d 507 (9th Cir. 1978) ........................................ 18

*Lewis* v. *Casey*,
   518 U.S. 343, 116 S.Ct. 2174, 135 L.Ed. 2d 606 (1996).................................. 18

*In re A.H. Robins Co.*,
   880 F.2d 709 (4th Cir. 1989) ........................................ 20

*In re Wells Fargo Home Mortgage Overtime Pay Litigation*,
   571 F.3d 953 (9th Cir. 2009) ....................................... 9, 10

*Molski* v. *Gleich*,
   328 F.3d 937 (9th Cir. 2003) ........................................ 17

*Nelson* v. *King County*,
   895 F.2d 1248 (9th Cir. 1990) ...................................... 16

*Novak* v. *Home Depot, U.S.A. Inc.*,
   259 F.R.D. 106 (D.N.J. 2009)......................... 1, 2, 11, 13, 14, 15

*Staton* v. *Boeing*,
   327 F.3d 938, 954 (9th Cir. 2003) ................................... 8

*Szabo* v. *Bridgeport Machs., Inc.*,
   249 F.3d 672 (7th Cir. 2001) ........................................ 18

*Valentino* v. *Carter-Wallace, Inc.*,
   97 F.3d 1227 (9th Cir. 1996) ........................................ 15

*Vinole* v. *Countrywide Home Loans, Inc.*,
   571 F.3d 935 (9th Cir. 2009) ......................................... 9

**TABLE OF AUTHORITIES**
**(continued)**

Page

*Wiener* v. *The Dannon Co., Inc.*,
255 F.R.D. 658 (C.D. Cal. 2009) ................................................. 17

*Wright* v. *Linkus Enters., Inc.*,
259 F.R.D. 468 (E.D. Cal. 2009) ................................................ 10

*Zinser* v. *Accufix Research Inst., Inc.*,
253 F.3d 1180 (9th Cir. 2001) ................................................... 17

**STATE CASES**

*Dean Witter Reynolds* v. *Super. Court*,
211 Cal. App. 3d 758, 259 Cal.Rptr. 789 (1989)................................ 16

*Dunbar* v. *Albertson's, Inc.*,
141 Cal. App. 4th 1422, 47 Cal.Rptr. 2d 83 (2006) ......................... 13

*Kettenring* v. *Los Angeles Unified School Dist.*,
167 Cal. App. 4th 507, 84 Cal.Rptr. 3d 196 (2006) ............... 13, 14, 15

*Post* v. *Palo/Haklar & Assoc.*,
23 Cal. 4th 942, 98 Cal.Rptr. 2d 671 (2000) ................................. 16

*Ramirez* v. *Yosemite Water Co., Inc.*,
20 Cal. 4th 785, 85 Cal. Rptr. 2d 844 (1999) ................................. 8, 9

**DOCKETED CASES**

*Cruz v. Dollar Tree Stores, Inc.*, No. 07-2050 SC,
2009 WL 1458032 (N.D. Cal. May 26, 2009)................................ 10, 11

*In re Home Depot Overtime Cases*, No. JCCP4229, 2006 WL 330169
(Cal. Super. Ct. App. Div. Feb 2, 2006) ..................... 2, 3, 10, 11, 12, 15

*In re Home Depot Overtime Cases*, No. E040215,
2007 WL 4128093 (Cal. App. 4th, Nov. 21, 2007)................... 2, 3, 11, 12, 15

*Lanzarone v. Guardsmark Holdings, Inc.*, No. CV06-1136 RPLAX,
2006 WL 4393465 (Sept. 7, 2006 C.D. Cal.) .................................... 8

**FEDERAL STATUTES**

29 C.F.R. 541.708 (2007) ......................................................... 13

Fed. R. Civ. P. 23 ................................................................. 8, 17

Fed. R. Civ. P. 23(a)............................................................. 8, 17, 18

Fed. R. Civ. P. 23(b) ............................................................. 8, 17

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TABLE OF AUTHORITIES**
**(continued)**

Page

Fed. R. Civ. P. 23(b)(2)............................................................................. 16

Fed. R. Civ. P. 23(b)(3)........................................................................... 8, 9

**STATE STATUTES**

Lab. Code §§ 98-98.4............................................................................... 16

1

## I.    **INTRODUCTION**

Despite the courts' repeated refusals to accept the theories on which

Plaintiffs' Motion is based, and despite the lack of evidence and authority to

support their arguments, Plaintiffs seek certification of Home Depot Assistant Store

Managers ("ASMs") under two theories: (1) a challenge to whether ASMs satisfy

the salary basis test (the "Class") and (2) an argument that ASMs are not primarily

engaged in exempt duties during an unspecified time period in which they "train"

for the ASM position (the "Training Class").[1]  Consistent with prior rulings

addressing these specific (and related) claims, Plaintiffs simply cannot satisfy their

burden to show that this case should be certified under either theory.

This attempt to certify the Class comes at the heels of an unsuccessful,

virtually identical attempt by Plaintiffs' counsel in *Novak v. Home Depot, U.S.A.*

*Inc.* 259 F.R.D. 106, 116 (D. N.J. 2009).  As with their claim in *Novak*, Plaintiffs

do not assert that Home Depot makes improper deductions from ASM wages based

on the quality or quantity of work performed.  Rather, Plaintiffs contend that Home

Depot has a policy whereby ASMs are subject to termination if they chose to work

less than 55 hours per week, thus "effectively reduc[ing] an ASM's salary."

Plaintiffs' MPA at 7:8-12.  However, like their deficient attempt in *Novak*,

Plaintiffs fail to provide any evidence that any such policy exists.  While Plaintiffs'

Motion asserts that all ASMs are "subject to defendant's Termination Policy,"

Plaintiff Kyle Diamond does not agree.  MPA 13:17-28.  Diamond admits that he is

not aware of such a policy, was not treated consistently with such an alleged policy

---

[1]  In their Motion, Plaintiffs assert that they "have not had the opportunity to conduct any discovery yet in this Action."  Memorandum of Points and Authorities In Support Of Plaintiffs' Motion For Class Certification ("MPA"), p. 3, n. 3.  In fact, Plaintiffs had ample opportunity to conduct discovery, but chose to wait until three days before their Motion was due to propound document requests, the only discovery they have conducted thus far.  *See* Declaration of Andrea L. Brown ("Brown Decl."), ¶ 2, Ex. A.  Moreover, Plaintiffs failed to meet and confer in person in advance of filing their motion as required by Local Rule 7-3 and the Court's Standing Order, despite the fact that Plaintiffs' local counsel and Home Depot's counsel are located within a block of each other in Sacramento.

1    (i.e., was not disciplined for taking time off) and does not know of a single ASM

2    who was ever disciplined—much less terminated—for failing to work a 55 hour a

3    week schedule. *See* Brown Decl., Ex. C, 111:10-19 (deposition of Kyle Diamond

4    ("Diamond Depo. II"). Moreover, even if Plaintiffs could establish such a policy

5    (which they cannot), this evidence would be nonetheless insufficient to establish a

6    violation of the salary basis test. *Cf. Novak*, 259 F.R.D. at 116 ("That any

7    employee, exempt or non-exempt, may be terminated for not showing up to work is

8    common sense"). In fact, as noted by the *Novak* court, the Department of Labor

9    ("DOL") has opined that an employer may require an employee to work a specified

10    schedule without affecting his/her exempt status. *See* Request for Judicial Notice

11    ("RJN"), Ex. 1 (DOL Opin. Letter dated March 10, 2006).

12            Plaintiffs likewise cannot satisfy their burden to demonstrate that the

13    Training Class is appropriate for certification. Indeed, a California court has

14    soundly rejected an attempt to certify Home Depot ASMs, based on clear

15    differences in their duties. *See In re Home Depot Overtime Cases*, No. JCCP4229,

16    2006 WL 330169 (Cal. Super. Ct. App. Div. Feb 2, 2006), *aff'd*, No. E040215,

17    2007 WL 4128093 (Cal. App. 4th, Nov. 21, 2007) (collectively "*Home Depot*

18    *Overtime*"). The courts in *Novak* and *Home Depot Overtime* both found that

19    individual issues predominated, including those arising from differences in stores,

20    the varied nature of ASM duties, their backgrounds, and the inevitability of

21    differences even when similar tasks are being performed—all issues present here in

22    equal force. Aside from what is typically (but not always) a single week of

23    classroom training (worked without overtime), California ASM training consists of

24    completion of an aptly named "self paced" training guide. Like the work

25    experience of ASMs in *Novak* and *Home Depot Overtime*, the training experiences

26    of ASMs, and the duties performed therein, vary extensively and are affected by

27    factors including the ASM's prior work experience, store location, store manager,

28    district manager, and the pace of business and circumstances in the ASM's store.

1  Moreover, the training guide activities performed by ASMs are often
2  indistinguishable from non-training ASM managerial duties – the same types of
3  duties key to rejection of attempts to certify a class in *Home Depot Overtime*.  Thus,
4  the evidence confirms that adjudication of Plaintiffs' claims requires the fact finder
5  to examine each training ASM's unique experience, including the training activities
6  performed by each ASM, the amount of time per week each spends on training
7  activities, and the extent to which training activities overlap with other ASM duties.
8  Certification should thus be denied.

9  **II.    STATEMENT OF FACTS**

10      **A.    Home Depot Assistant Store Managers**

11      Each Home Depot store is managed by one store manager and a varying
12  number of ASMs.[2]  Depending upon a number of factors, including size of the
13  store, hours of operation, sales volume, number of hourly associates, and level of
14  experience of its salaried managers, a store may have between two to seven ASMs.[3]
15  While some ASMs are external hires, the vast majority are internal promotions who
16  often move up from a Department Supervisor position.[4]

17      ASMs are directly responsible for two to six Home Depot departments and/or
18  the store's operations (*e.g.* receiving and freight, cashiers, phone center, returns and
19  special services).[5]  While each ASM's duties vary depending on the unique
20  circumstances of the ASM and his/her store, duties often include (among others)
21  staffing and training employees, checking inventory and ordering, evaluating
22  departmental performance, controlling loss of inventory, overseeing safety and
23  security, interviewing applicants, making hiring recommendations, evaluating
24  employee performance, administering discipline, and overseeing customer service.[6]
25

---

26  [2] Declaration of Art Miner ("Miner Decl."), ¶¶ 3-6.
    [3] *Id.*
27  [4] *Id.* at ¶ 7.
    [5] *Id.* at ¶ 6; Declaration of Carin Jeffries ("Jeffries Decl."), ¶ 3.
28  [6] *Id.*

DEFENDANT HOME DEPOT'S OPPOSITION TO
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

B.    **Assistant Store Manager Training**

In California, since approximately September of 2005,[7] Home Depot has trained ASMs through its "Sure Start" training program, which consists of two components. The first is often a one-week classroom session, the content of which covers different aspects of the ASM position.[8] Typically, each day of the classroom training lasts six to eight hours, including time spent on lunch and rest breaks.[9]

The second component is in-store training through the use of a "Sure Start Self Paced Guide" ("Training Guide").[10] The Training Guide consists of 13 modules that relate directly to the ASM's managerial duties, such as labor management, safety, and financial management.[11] As ASMs are working through the Training Guide they are expected to and do perform typical ASM duties, such as supervising and coaching associates in specific departments.[12] Because the modules so closely relate to the ASM's managerial duties, it is often difficult to distinguish Training Guide activities from "regular" ASM work.[13] For instance, providing performance feedback to Department Supervisors is a key managerial duty.[14] Accordingly, one of the modules asks the ASM to record occasions of giving positive feedback to Department Supervisors.[15] Thus, the ASM can complete this part of the module by simply performing her ordinary ASM duties.[16]

---

[7] Prior to the implementation of Sure Start, ASMs in California were trained using a series of binders. Like Sure Start, the training was designed to be self paced and, as such, varied considerably from store to store, manager to manager, individual to individual. This training, however, was narrower in focus, addressing primarily operations and merchandising, whereas Sure Start includes areas such as human resources functions. *See* Miner Decl., at ¶¶ 34-35.
[8] *See e.g.*, Declaration of Yvonne Stewart ("Stewart Decl."), ¶ 9.
[9] *See e.g.*, Stewart Decl., ¶ 9; Declaration of Rich Wilson ("Wilson Decl."), ¶ 6; Declaration of Joseph Banan ("Banan Decl."), ¶ 13; Declaration of Isaac Fratini ("Fratini Decl."), ¶ 7.
[10] Miner Decl., ¶¶ 8, 13.
[11] *Id.* at ¶ 9.
[12] *Id.*; *see also* Declaration of Michael White ("White Decl."), ¶¶ 7-10; Wilson Decl., ¶ 4; Stewart Decl., ¶¶ 5-8; Banan Decl., ¶ 7.
[13] Miner Decl., ¶ 14.
[14] *Id.*
[15] *Id.*
[16] *Id.* The Training Guide also asks ASMs to evaluate and analyze a plan to address loss of merchandise, which is another managerial duty. *Id.* at ¶ 16.

ASMs are generally expected to complete the Training Guide within 90 days of becoming an ASM.[17]  As the term "Self Paced" in the Training Guide's title suggests, however, Home Depot intends that the time each ASM spends on the Training Guide per day will vary.[18]  Factors influencing time spent on the Training Guide are highly individualized and include the ASM's prior experience (*e.g.*, whether and how long the ASM has worked at Home Depot), the season and day of the week of the ASM's shift; whether a sale or promotion is going on; the pace of customers during a particular shift; the particular activity set forth in the Training Guide and where that activity is located; the store where the ASM is located; and the store manager to whom the ASM reports.[19]

The result is a training experience that is very far from uniform.  Some ASMs spend a few hours a day for a few weeks working on the Training Guide, while others spend significantly more time.[20]  In fact, some ASMs spend all of their work day performing ASM duties and never work through the Training Guide.[21]  Some ASMs go to other Home Depot stores to complete certain modules within that host store, while others never train in a different store.[22]  Some ASMs train for the ASM position while they are Department Supervisors, through Home Depot's College Leadership Program, and never go through the Sure Start training.[23]  Indeed, ASM's training experiences vary so greatly, one would need to inquire with each ASM to determine the extent of their training, whether it was intermixed with

---

[17] *Id.* at ¶ 11.
[18] *Id.* at ¶ 13.
[19] *Id.*
[20] *Compare* Stewart Decl., ¶ 6 ("two hours a day for about two weeks working on the modules from the SureStart guide) *with* Banan Decl., ¶ 11 ("During those first five weeks, I estimate that I spent 60% of my time performing ASM duties, and 40% of my time completing the SureStart training.")
[21] White Decl., ¶ 7. ("I ended up never doing any of the modules in the SureStart guide.")
[22] *Compare* Wilson Decl., ¶ 5 (spent about seven or eight days at stores other than primary store but never worked more than eight hours on each of those days) *with* Stewart Decl., ¶ 9 (never went to any other store to train as an ASM); Banan Decl. ¶ 7 (same).
[23] Jeffries Decl., ¶ 4-5.

1   typical ASM duties (which themselves vary from individual to individual), and how
2   much time they actually spent working with the Training Guide, if any.[24]

3   **C.    Plaintiffs Araceli Mendoza and Kyle Diamond**

4        Araceli Mendoza worked for Home Depot from 1999 through September of
5   2007 and held various ASM positions at five different Home Depot locations in
6   Southern California[25] Mendoza trained as an ASM in late 2002 to early 2003, well
7   before period covered by the proposed Training Class period (July 8, 2005 to the
8   present) and thus, as discussed *infra*, is neither an adequate nor typical
9   representative of the proposed class).[26]

10       Kyle Diamond started at Home Depot in 2004 as a sales associate in the San
11  Bernardino, California store.[27]  In September 2005, Diamond was promoted to
12  ASM and attended a two-week classroom training session.[28]  Diamond testified that
13  he recalled the training running from 8 a.m. to 5 p.m. with a 45 minute to one hour
14  lunch break.[29]  During these two-weeks, Diamond did not perform any other work
15  for Home Depot.[30]  Diamond testified that after the classroom training, he
16  transferred to the Chino Home Depot store to do in-store training and was there
17  only for training.[31]  However, Diamond admitted that he knows of other ASMs who
18  had very different training experiences; some performed only classroom training
19  and some did not travel to a separate store for in-store training.[32]

20       Diamond testified that, while at the Chino store, he was given a training
21  guide but understood that he was not required to use it, and in fact recalls working
22  on the modules for only between two and five days of the several weeks he spent at

---

[24] *See e.g.* Jeffries Decl.; Wilson Decl.; Stewart Decl; Banan Decl.; Declaration of Fady Jbeilly ("Jbeilly Decl.")
[25] Brown Decl., Ex. D (Deposition of Araceli Mendoza taken on February 22, 2009 in the FLSA Action) at 39:9-13; 36:4-14; 44:19-45:7; 62:8-11; 96:14-17.
[26] *Id.* at 42:16-44:18.
[27] Brown Decl., Ex. C (Diamond Depo. II) at 23:15-24.
[28] *Id.* at 23:15-18; 28:1-23.
[29] *Id.* at 29:8-14; 31:10-19.
[30] *Id.* at 31:20-32:3.
[31] *Id.*
[32] *Id.* at 57:5-9.

DEFENDANT HOME DEPOT'S OPPOSITION TO
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

1  the store.[33]  While training at the Chino store, Diamond spent a portion of his time

2  reviewing Home Depot's Standard Operating Procedures ("SOPs"), but also

3  performed managerial duties, such as creating an extended labor forecast for the

4  store, working to resolve customer complaints and reviewing associates'

5  performances against sales goals.[34]  After that period, Diamond worked as an ASM

6  until Home Depot terminated his employment after an incident in September 2008

7  in which he made an inappropriate racial remark in front of subordinates.[35]

8      **D.**    **Assistant Store Manager Hours**

9          Like other retail managers, ASMs are scheduled to work in shifts.  The

10  typical ASM schedule is five days a week for eleven hours per day (including an

11  hour lunch).[36]  Depending on the needs of the store, however, ASMs work more or

12  less hours than they are scheduled.[37]  ASMs can and do leave before the end of their

13  scheduled shift without loss of pay or threats of termination.[38]  Home Depot does

14  not have a policy of terminating ASMs who work less than 55 hours per week and

15  Plaintiffs have not offered a single piece of evidence to suggest otherwise—nor can

16  they.  ASMs are not told that they will be fired for not working their entire

17  scheduled shift, nor has an ASM's salary been reduced for leaving before the end of

18  a shift.[39]  Diamond's experiences confirm this:  he admits he knows of no Home

19  Depot policy by which an ASM would be terminated for working less than 55 hours

20  per week.[40]  Indeed, Diamond took time off from his scheduled shift for medical

21  reasons, with no discipline or deductions to his pay.[41]  Further refuting the

22  allegation of a Home Depot 'policy', he testified that the store manager told him the

23

---

24  [33] *Id.* at 40:21-41:17.
    [34] *Id.* at 49:10-13; 63:22-65:8; 65:18-67:6.

25  [35] Brown Decl., Ex. B (Diamond Depo. I) at 34:21-24.
    [36] Miner Decl., ¶ 39.

26  [37] *See e.g.*, Stewart Decl., ¶ 15.
    [38] *See e.g.*, Jeffries Decl., ¶ 6.

27  [39] *See e.g.* Stewart Decl., ¶ 16; Jeffries Decl., ¶ 6; Fratini Decl., ¶ 13; Miner Decl.,
    ¶¶ 39-40.

28  [40] Brown Decl., Ex. C (Diamond Depo. II) at 107:1-24.
    [41] *Id.* at 111:20-24.

DEFENDANT HOME DEPOT'S OPPOSITION TO
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

1    consequences of not working his schedule "would depend on the store manager."[42]

2    **III.    PLAINTIFFS CANNOT SATISFY THEIR RULE 23 BURDEN**

3          **A.    Plaintiffs' Legal Burden Precludes Certification.**

4          "The party seeking certification bears the burden of demonstrating it has met

5    all four requirements of Rule 23(a) and at least one of the requirements of Rule

6    23(b).  Because "the class determination generally involves considerations that are

7    enmeshed in the factual and legal issues compromising the plaintiffs' cause of

8    action, courts need not accept all allegations in the complaint and instead must look

9    past the pleadings 'to evaluate carefully the legitimacy of the named plaintiff's plea

10   that he is a proper class representative.'" *Lanzarone v. Guardsmark Holdings, Inc.*,

11   2006 WL 4393465, at *1 (Sept. 7, 2006 C.D. Cal.); *Staton v. Boeing*, 327 F.3d 938,

12   954 (9th Cir. 2003).  Here, Plaintiffs fail to meet their burden under Rule 23,

13   satisfying *none* of the requirements under Rule 23(b) and few under Rule 23(a).

14         **B.    Plaintiffs Cannot Satisfy The Requirements of Rule 23(b)(3)**

15         Rule 23(b)(3) permits certification when common questions of law or fact

16   predominate, and a class action is superior to other methods for fairly and

17   efficiently adjudicating the controversy.  The inquiry must include consideration of

18   "the likely difficulties in managing a class action." *See Gary Plastic Packaging*

19   *Corp. v. Merrill, Lynch, et al.*, 903 F.2d 176, 180 (2d Cir. 1990).

20               **1.    Individual Issues Predominate Over Common Issues**

21         Plaintiffs must show that common issues of fact or law "predominate over

22   questions affecting only individual members." Fed. R. Civ. P. 23(b)(3).  In cases

23   alleging misclassification of exempt employees, the court must consider "first and

24   foremost, how the employee actually spends his or her time." *Ramirez v. Yosemite*

25   *Water Co.*, 20 Cal. 4th 785, 802, 85 Cal. Rptr 2d 844 (1999). Plaintiffs

26   acknowledge that when such a determination is required, courts often have

---

27   [42] *Id.* at 110:14-111:6.  Significantly, Diamond testified that he did not know of a
28   single ASM who had been terminated or even disciplined in any way for not
     working their scheduled shift. *Id.* at 111:10-19

8

1  difficulty finding predominance of common issues. MPA 18:7-13. Perhaps hoping

2  to avoid this difficulty, Plaintiffs assert that their claims do not "require the court to

3  determine the percentage of time employees spend doing exempt versus non-

4  exempt work." MPA 18:7-13. This contention is meritless, however, given that the

5  basis of their claims is that the Training Class is misclassified "because they never

6  perform[] any exempt work during their Training Period." MPA 6:20-24. Since

7  Plaintiffs' theory focuses on the duties performed by ASMs while in training, the

8  court must, under *Ramirez*, consider how ASMs spend their time. Ignoring that

9  their claims necessitate this very determination, Plaintiffs argue that predominance

10 can be easily found based on: (1) Home Depot's uniform policy of classifying all

11 ASMs in training and after as exempt; (2) Home Depot's alleged uniform training

12 practice and policies; (3) Home Depot's alleged termination policy; and (4)

13 Plaintiffs' challenge to the alleged policies set forth in (1)-(3) above. MPA 17:19-

14 18:3. As explained below, Plaintiffs' argument is without merit.

15              **a.    An "Exempt Policy" Argument Does Not Apply Here**

16          Plaintiffs cannot show common issues predominate merely because Home

17 Depot classifies ASMs and training ASMs as exempt. The Ninth Circuit recently

18 confirmed that while a uniform exemption policy may suggest some degree of

19 homogeneity among employees, it "does nothing to facilitate common proof on the

20 otherwise individualized issues." *In re Wells Fargo Home Mortgage Overtime Pay*

21 *Litig.*, 571 F.3d 953, 959 (9th Cir. 2009); *see Vinole v. Countrywide Home Loans,*

22 *Inc.*, 571 F.3d 935, 946 (9th Cir. 2009) ("focusing on a uniform exemption policy

23 alone does little to further the purpose of Rule 23(b)(3)'s predominance inquiry,

24 which requires an assessment of the relationship between individual and common

25 issues"). Thus, the only relevant common issues Plaintiffs allege are Home Depot's

26 alleged uniform training practice and policies and termination policies, the first of

27 which is not uniform in any sense of the word and the second of which does not

28 exist.

1          **b.    Each ASM Has A Different Training Experience**

2          Contrary to Plaintiffs' assertions, this is not a case like those cited by the

3    court in *In re Wells Fargo Overtime Pay Litigation* court where common proof

4    could be found in "comprehensive uniform policies detailing the job duties and

5    responsibilities of employees," that "reflect the realities of the workplace." 571

6    F.3d at 958-59.  Plaintiffs claim Home Depot's SOPs set forth the "precise

7    operations, policies and procedures, which are to be followed by all Home Depot

8    employees in every store." MPA 4: 6-13.  However, Plaintiffs offer no support for

9    this assertion, submitting only the table of contents from the SOPs as evidence, and

10   never explaining how the SOPs can be considered a "comprehensive uniform

11   polic[y] detailing the job duties and responsibilities" of training ASMs.[43]  Further,

12   the court in *Home Depot Overtime I* flatly rejected the argument that the SOPs

13   ensure uniformity in how ASMs perform their jobs, stating "[t]he reality is

14   considerably different . . . in many ways, each store is unique . . . [t]he nature of the

15   work changes from department to department, as well." 2006 WL 330169, at * 3.

16         The only other "policy" Plaintiffs offer with respect to the Training Class are

17   excerpts of a Training Guide that Plaintiff Diamond does not recognize and admits

18   he has never seen.[44]  The Training Guide sheds no light on the job duties and

19   responsibilities of training ASMs and, more importantly, how they actually spend

20   their time each day.[45]  Even Diamond states he did not think performing the

21   Training Guide exercises was mandatory and only did "some work" in it.[46]  This

22   alleged "policy" is thus vastly different from policies at issue in the cases Plaintiffs

23   cites. *See e.g., Wright v. Linkus Enters., Inc.*, 259 F.R.D. 468, 471 (E.D. Cal.

24   2009) (defendant had uniform policy restricting time plaintiffs permitted to record

25   on time cards)); *Cruz v. Dollar Tree Stores, Inc.* No. 07-2050 SC, 2009 WL

26   _____

27   [43] Squitieri Decl., Ex. B.
     [44] Brown Decl., Ex. C at 42:4-11; Squitieri Decl., Exs. G, H..
     [45] *See e.g.,* Fratini Decl.; White Decl.; Wilson Decl.; Banan Decl.
28   [46] Brown Decl., Ex. C (Diamond Depo. II) at 40:2-16.

DEFENDANT HOME DEPOT'S OPPOSITION TO
                              PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

1458032, *8 (N.D. Cal. May 26, 2009) (defendant had uniform policy requiring store managers to certify every week that they spend most of their time performing a finite number of duties).

Ultimately, Plaintiffs cannot dispute the fact that this is precisely the type of case in which the fact-finder must grapple with how each ASM in training spends her time and the type of duties he/she performs, the same situation found untenable as a basis for certification in *Novak* and *Home Depot Overtime*. While ASMs may be given a Training Guide, it is a *self-paced* guide which necessarily creates a variety in how, when, and even if ASMs complete the guide, and the actual duties he or she performs while doing so.[47] This variety results from several factors, including the ASMs' experiences with Home Depot, their individual skill and expertise, the store manager and the needs of the ASM's particular store.[48] For example, some ASMs never go through Sure Start training,[49] while others receive the Training Guide, but never utilize it.[50] As shown below, these significant differences directly affect the exemption analysis.

### (1)    The Executive Exemption Requires An Individualized Inquiry

The executive exemption requires, among other things, that an employee: (1) manage a recognized department or subdivision; (2) customarily and regularly direct the work of two or more other employees; and (3) whose recommendations as to the hiring or firing, and advancement, promotion or change of status of other employees, be given particular weight. *See* RJN, Ex. 2 (Wage Order 4-2001(1)(A)(1)).

Plaintiffs contend that all ASMs are assigned a Home Depot store in which to train and do not perform managerial duties while training for a two to eight week

---

[47] Miner Decl., ¶ 10.
[48] *Id*. at ¶ 11.
[49] *Compare* Jeffries Decl., ¶ 7-8 (went through College Leadership Program as a Department Supervisor to train for ASM position) *with* White Decl., ¶ 7 (only did one week of classroom training).
[50] White Decl., ¶ 7.

1  period.  MPA 5:8-9, 18-19; 6:16-17.  The evidence, however, confirms that ASM

2  training experiences are markedly different.  Some ASMs never go to a store other

3  than their home store to train.[51]   And, in many instances, members of the Training

4  Class find themselves immediately immersed in the same types of managerial

5  duties performed by the proposed class rejected in *Home Depot Overtime*.[52]  As

6  ASM Thom describes it, while "training," he "was on [his] own" doing the ASM

7  job, "the same way [he] do[es] it currently."[53] At the same time, some ASMs may

8  spend a portion of their day working through the Training Guide.[54]  Thus, because

9  this training experience varies based on an ASM's unique circumstances, analyzing

10  whether the Training Class satisfies the executive exemption would require an

11  individualized analysis of the Training Guide tasks each ASM performed, how

12  much time spent on Training Guide tasks versus ASM tasks, and whether those

13  tasks (*e.g.*, providing associate feedback) satisfy the executive exemption.

14                  **(2)**     **The Administrative Exemption Also Requires<br>An Individualized Inquiry**

15       California law also exempts from overtime employees who are primarily

16  engaged in the performance of non-manual work directly related to the general

17  business operations of their employer, and exercise discretion and independent

18  judgment with regard to matters of significance. *See* RJN, Ex. 2 (Wage Order 4-

19  2001(1)(A)(2)).  Some ASMs perform work that is directly related to the general

20  business operations of Home Depot, such as inventory management, scheduling of

21  employees, bookkeeping, safety compliance and training, and forecast analyses.[55]

22  Diamond's experience is illustrative of this:  for example, while in training, he

23  spent six hours creating a complex labor forecast for the Chino store—clearly an

---

24

25  [51] *See e.g.*, Declaration of Avinash Maraj ("Maraj Decl."), ¶ 4; Stewart Decl., ¶ 9;
Banan Decl., ¶ 13.

26  [52] *See e.g.*, Stewart Decl, ¶¶ 5-7; Wilson Decl., ¶ 4; Jeffries Decl., ¶ 5; White Decl, ¶ 8.

27  [53] Thom Decl., ¶ 7.
[54] Banan Decl., ¶ 11 (during the first five weeks as an ASM, spent approximately

28  40% of his time on SureStart and 60% performing regular ASM duties).
[55] Jeffries Decl., ¶ 5.

1  exempt duty.[56]  Thus, to determine if the administrative exemption applies, the fact

2  finder must analyze the duties performed by each "training" ASM, the purpose for

3  doing them, and how much time each individual spent engaged in each duty.

4          **(3)**    **Under The Wage Orders, The Fact Finder Must**

5              **Analyze The Exemptions Must Be Analyzed By Week**

6          An employee's exempt status can vary on a week-to-week basis.  *See* RJN,

7  Ex. 2 (Wage Order 4-2001(1)(A)(1)(e), (1)(A)(2)(f) ("The work actually performed

8  by the employee during the course of the week must, first and foremost, be

9  examined and the amount of time the employee spends on such work, together with

10  the employer's realistic expectations and the realistic requirements of the job, shall

11  be considered in determining whether the employee satisfies this requirement.");

12  *see also Dunbar v. Albertson's, Inc.*, 141 Cal. App. 4th 1422, 1426-27, 47 Cal.

13  Rptr. 3d 196 (2006) (reference in regulations to "workweek" suggests classification

14  is examined on a week-to-week basis).  Thus, ASMs can potentially fall under

15  different exemptions for different weeks of their in-store training, depending on the

16  mix of duties.[57]

17        **c.**    **The Salary Basis Test Is Met**

18          Plaintiffs contend that class certification is appropriate because they and

19  other ASMs were allegedly not paid on a salary basis as is required by law, the

20  same contention the court rejected in *Novak*.  The Division of Labor Standards

21  Enforcement (DLSE) has interpreted "salary" in Wage Order 4-2001 to mean a

22  predetermined amount, which totals at least two times the California minimum

23  wage per month, "which amount is not subject to reduction because of variations in

24  the quality or quantity of work performed."  *See Kettenring v. Los Angeles Unified*

25  ———————————

[56] Brown Decl., Ex. C (Diamond Depo. II) at 63:22-65:8.

26  [57] Moreover, an employer may "tack" exemptions together so that an employee may be covered by two exemptions at once. *See* RJN, Ex. 3 (DLSE Opinion Ltr.

27  2003.05.23): *see also* 29 C.F.R. 541.708 (2007).  Here, for example, the duties of training ASMs may satisfy both the executive and administrative exemptions.

28  Therefore, a highly individualized analysis is mandated.

1  *School Dist.*, 167 Cal. App. 4th 507, 513, n.4 (2009), 84 Cal. Rptr. 3d 196.

2      Plaintiffs do not maintain that Home Depot has ever reduced the amount of

3  their paychecks, or any other ASM's paycheck, based on the quantity or quality of

4  work performed.  Rather, Plaintiffs argue that Home Depot violates the salary basis

5  requirement because it has a policy of terminating ASMs if the ASM chooses to not

6  work an entire schedule shift.  MPA 7:3-12.  Plaintiffs fail to provide any evidence

7  of this policy.  All Plaintiffs offer are paragraphs from their Complaint and an

8  undated ASM job description, which states that ASMs should have the "ability to

9  work a flexible, 55 hours per week schedule."  Of course, neither demonstrates the

10  existence of a policy violating the law.  Diamond and other ASMs state that they

11  were not aware of a termination policy, and often adjust their schedules or even

12  leave before the end of their shifts, when the needs of the store allow.[58]

13      In *Novak*, Plaintiffs offered testimony from two ASMs who stated they were

14  required to be at work during their scheduled shifts and that Home Depot had

15  attendance guidelines.  *See Novak*, 259 F.R.D. at 116.  The court held that this

16  evidence "falls far short of establishing a payroll policy that was not a salary" and

17  "does not provide common proof regarding a mis-classification of New Jersey

18  MASMs' exempt status."[59]  *Id.*  Here, Plaintiffs do not even provide that level of

19  evidence.

20      Further, Plaintiffs have not, and cannot, cite to any authority in which an

21  employee was found to be misclassified where an employer's policy provided for

22  disciplinary discharge.  In fact, an employer's requirement that exempt employees

23  work a specific schedule does not defeat the exempt status of those employees.  *See*

24  RJN, Ex. 1 ( DOL Op. Letter, Mar. 10, 2006 ) (employer's requirement that exempt

25

26  [58] Brown Decl, Ex. C (Diamond Depo. II) at 111:12-20; *See e.g.* Stewart Decl., ¶ 16; Jeffries Decl., ¶ 6; Fratini Decl., ¶ 13; Miner Decl., ¶ 39.

27  [59] Like California, New Jersey requires an exempt employee be compensated by a predetermined amount that is not subject to reduction due to "variations in the quality or quantity of the work performed."  *See Novak*, 259 F.R.D. at 116 (quoting

28  N.J.A.C. 12:5607.1(a)(6).)

1   employees work a certain number of hours a week or face "discipline up to and

2   including discharge" does not result in a violation of the salary basis test and loss of

3   the exemption).[60]  As the Court stated in *Novak*, "[t]hat any employee, exempt or

4   non-exempt, may be terminated for not showing up to work is common sense."

5   *Novak*, 259 F.R.D. at 116.

6       **C.      Plaintiffs Have Not Shown A Class Action Is Superior**

7           Plaintiffs must show that a class action is superior to other methods of

8   adjudication.  *See Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir.

9   1996).  This is precisely the type of case in which superiority is lacking;  thus, the

10  courts in *Novak* and in *Home Depot Overtime* both found that plaintiffs did not

11  meet the superiority requirement because Home Depot "has a right to litigate its

12  defenses against each []ASM," *Novak*, 259 F.R.D. at 116, which includes the

13  "substantial differences among each store and each []ASM's job responsibility."

14  *Home Depot Overtime I*, 2006 WL 330169, at * 4-7.  The same variations appear

15  here.  As explained above, the class mechanism here will require highly

16  individualized mini-trials given the differences in each ASM's experience while

17  training.  Each mini-trial will require extensive testimony about the many factors

18  affecting the exemption analysis of each ASM, a process that would strain any

19  judicial resources.  There are more preferable methods of handling such claims,

20  including a private suit or an individual claim with the DLSE.

21          An ASM can file an individual suit for unpaid wages and penalties in which

22  the losing defendant can be required to pay all attorneys fees and costs under Labor

23  Code section 218.5.  As the court in *Home Depot Overtime* stated "an individual

24  []ASM does have sufficient incentive to pursue a meritorious claim."  2006 WL

25  330169, at * 5; *see also Novak*, 259 F.R.D. at 117 ("[t]he superior avenue for a

26  MASM is to bring an individual action.")[61]

---

27  [60] For the most part, California follows the "salary basis test" set forth in the FLSA.
    *See Kettenring*, 167 Cal. App. 4th at 513.

28  [61] The DLSE has established an efficient and effective process to resolve precisely

1

**D.    Plaintiffs Lack Standing to Seek Certification Under Rule 23(b)(2)**

2      Plaintiffs similarly cannot meet the requirements of Rule 23(b)(2).  As

3  former employees at the time they filed the Complaint, Plaintiffs lack standing to

4  seek declaratory relief pursuant to Rule 23(b)(2) on behalf of the two ASM classes

5  they seeks to represent.  To have standing to seek declaratory relief, Plaintiffs must

6  demonstrate a real or immediate threat that they will suffer the alleged harm again.

7  *See B.C. v. Plumas United School District*, 192 F.3d 1260, 1264 (9th Cir, 1999).

8  Here, Plaintiffs have not made this showing.  As such, the classes Plaintiffs seek to

9  represent likewise lack standing.  *See B.C.*, 192 F.3d at 1264 ("A class of plaintiffs

10  does not have standing to sue if the named plaintiff does not have standing.").

11      Acknowledging this deficiency, Plaintiffs contend that the Court should

12  consider that because the ASM training period is allegedly only eight weeks in

13  duration, "no Home Depot employee will ever have an ongoing interest in a

14  declaratory judgment."  MPA, 20:1-2.  This appears to be an argument of the

15  "capable of repetition, but evading review" doctrine.  That doctrine, however, is

16  only an exception to the mootness doctrine; "cases in which the plaintiff possess

17  standing, but then loses it due to an intervening event."  *Nelson v. King County*, 895

18  F.2d 1248-49 (9th Cir. 1990).  In the present matter, Plaintiffs, as former

19  employees, did not have standing to seek declaratory relief when their Complaint

20  was filed, thus "their invocation of this exception is not warranted."  *Id.*

21      Moreover, even if Plaintiffs did have standing, their request for certification

22  under Rule 23(b)(2) is inappropriate because the primary relief they seek is

23  monetary damages, not declaratory relief.  Certification under Rule 23(b)(2) "is

24  appropriate only where the primary relief sought is declaratory or injunctive."

25  these types of claims at no cost to the employee.  See Lab. Code §§ 98-98.4; *Post v.*
26  *Palo/Haklar & Assoc.*, 23 Cal. 4th 942, 947, 98 Cal. Rptr. 2d 671 (2000).  Because
   this process is available to all who believe they have wrongly been classified,
27  Plaintiffs cannot show that a class action is superior.  *See Dean Witter Reynolds v.*
   *Super. Court*, 211 Cal. App. 3d 758, 773 (1989) (rejecting certification; "in contrast
28  to the streamlined procedure expressly provided by the Legislature, management of
   a class action is a 'difficult legal and administrative task'") (citation omitted).

1  *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1195 (9th Cir. 2001). In

2  determining the primary relief sought, the court examines the facts and

3  circumstances of the case, and "the intent of the plaintiffs in bringing the suit."

4  *Molski v. Gleich*, 328 F.3d 937, 950 (9th Cir. 2003). Here, Plaintiffs are former

5  employees and Diamond stated during his deposition that his intent in bringing this

6  suit was to recover unpaid wages he thinks Home Depot owes him.[62] Accordingly,

7  as Diamond readily admits, Plaintiffs' primarily seek monetary damages, not

8  declaratory relief.

9  **E.    Plaintiffs Cannot Satisfy the Requirements of Rule 23(a)**

10  In addition to failing to meet at least one of the requirements of Rule 23(b),

11  Plaintiffs have not met the requirements of Rule 23(a). A court "should not grant

12  class certification unless 'it is satisfied, after a rigorous analysis, that all of the

13  requirements of Rule 23(a)' are met." *Wiener v. The Dannon Co., Inc.*, 255 F.R.D.

14  658, 664 (C.D. Cal. 2009). Specifically, plaintiffs bear the burden of proof and

15  persuasion of establishing: (1) numerosity, (2) commonality, (3) typicality, and (4)

16  adequacy. Fed. R. Civ. P. 23.

17  **1.    Plaintiffs Fail To Show Commonality**

18  As discussed in section B *supra*, Plaintiffs cannot establish questions of law

19  or fact common to the class, or that such common issues predominate. Indeed, the

20  experiences of ASMs vary extensively in each and every way that would be

21  essential to the proof of non-exempt status here, including the means by which

22  training occurs, when and how ASM duties are intermixed with the training

23  experiences, and the variation that exists within those duties themselves.

24  **2.    Plaintiffs Are Neither Adequate Nor Typical Representatives Of The Class**

25  Plaintiffs must establish that their claims and the defenses to those claims are

26  typical of those of the class. *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th

27  Cir. 1992). The test is "whether other members have the same or similar injury,

28  _____
[62] Brown Decl., Ex. C (Diamond Depo II) at 11:6-24.

DEFENDANT HOME DEPOT'S OPPOSITION TO
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

1    whether the action is based on conduct which is not unique to the named plaintiffs,

2    and whether other class members have been injured by the same course of

3    conduct." *Id.; see also Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 676 (7th

4    Cir. 2001). Plaintiffs must also establish that they are adequate class

5    representatives. *See* Fed. R. Civ. Proc. 23(a).

6         Plaintiffs fail to meet these requirements for several reasons. First, Mendoza

7    is an inadequate class representative because, despite Home Depot's repeated

8    efforts, she has refused to make herself available for deposition.[63]  Class

9    representatives must demonstrate their ability to prosecute the action completely

10   and vigorously on behalf of absent class members. *See Lerwill v. Inflight Motion*

11   *Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978). Mendoza's unwillingness to

12   appear for deposition despite Home Depot's flexibility in scheduling demonstrates

13   that serving as a class representative is not a priority, and that she is not committed

14   to prosecuting this action "completely and vigorously" as required under the law.

15        Mendoza's inadequacy as a class representative is further confirmed by the

16   fact that she lacks standing to bring claims on behalf of the Training Class.

17   Specifically, pursuant to the four year statute of limitations applicable to the

18   Training Class claims, Mendoza had to complete training after to July 8, 2005. *See*

19   MPA 2:18-20. Mendoza, however, trained as an ASM from December 2002 to

20   February 2003. *See* II.C. *supra*. As such, Mendoza lacks standing to assert the

21   Training Class claims and, as such, cannot be an adequate class representative (nor

22   possess typical claims) of the Training Class. *See Lewis v. Casey*, 518 U.S. 343,

23   _____

24   [63] On September 28, 2009, Home Depot noticed Mendoza's deposition for several
     weeks later, on November 11. Only nine days before the deposition, on November

25   2, Plaintiffs' counsel informed Home Depot that Mendoza was not available on the
     noticed date. Home Depot offered several alternative dates for the deposition to no

26   avail. Finally, on December 9, Plaintiffs notified Home Depot that Mendoza would
     be unavailable until after the holiday season. *See* Brown Decl., ¶ 6, Ex. E. Further,

27   as discussed above, Mendoza's training took place outside the Training Class
     period. For these reasons, Home Depot asks that Mendoza's deposition testimony

28   given in the FLSA Action, attached to the Squitieri Decl. as Exhibit E be stricken.
     *See* Home Depot's Objections to Evidence filed concurrently herewith.

1    349, 116 S.Ct. 2174, 135 L.Ed. 2d 606 (1996).

2    Diamond likewise is an improper representative because his claims are not

3    typical of the individuals he seeks to represent. Plaintiffs contend that all "were

4    subject to defendant's Termination Policy that Plaintiffs assert abrogates the salary

5    basis test." MPA 13:17-18. However, contrary to this alleged policy Diamond

6    admitted that whatever disciplinary action, if any, for not working an assigned

7    schedule would be determined by that ASM's store manager and would depend on

8    the ASM's particular circumstances, including the effect on the ASM's

9    performance and prior documented counseling.[64] Thus, Diamond admits that any

10    potential risk of termination that he supposedly (but not actually) faced was not

11    typical of the Class, but was instead unique to his particular manager and

12    circumstances.[65]

13    Similarly, with respect to the Training Class, Diamond again admits that his

14    claims are not typical to the class. Plaintiffs allege that all "underwent training

15    during the Training Period and worked over 40 hours per week during the Training

16    Period." MPA 13:18-21. In contrast, Diamond testified that the classroom portion

17    of the training ran from approximately 8 a.m. to 5 p.m., including a 45 minute to

18    one hour break,[66] that not everyone attended every day of the session,[67] and that

19    some ASMs in his class did no training beyond the classroom session.[68]

20    Accordingly, Plaintiffs' claims that ASMs all work over 40 hours per week during

21    training is not typical to the Training Class.

22    **F.    Plaintiffs' Class Definitions are Defective**

23    The existence of an ascertainable class is a prerequisite to maintain a class

24    
_____

25    [64] Brown Decl., Ex. C (Diamond Depo. II) at 110:8-111:9.
     [65] Of course, Diamond was not terminated for failing to work his scheduled hours.

26    and is not aware of any ASM being terminated for this reason. (Instead, he was
     terminated for violating Home Depot policy by making the inappropriate racial

27    remark.) Brown Decl., Ex. B (Diamond Depo. I) at 34:21-24
     [66] Brown Decl., Ex. C (Diamond Depo. II) at 29:8-14; 31:10-19

28    [67] *Id.* at 31:2-6
     [68] *Id.* at 97:17-98:3.

1    action. *See In re A.H. Robins Co.*, 880 F.2d 709, 728 (4th Cir. 1989), *abrogated on*

2    *other grounds*. The class definition must be sufficiently definite so that it is

3    administratively feasible for the Court to determine whether a particular individual

4    is a member without delving into the merits of the claim. *See Hagen v. City of*

5    *Winnemucca*, 108 F.R.D. 61, 63-64 (D. Nev. 1985). Thus, the Court must be able

6    to ascertain class membership without a determination of fact- intensive questions.

7    *Daniels v. City of N.Y.*, 198 F.R.D. 409, 414 (S.D.N.Y. 2001).

8         Here, Plaintiffs defined each class <u>solely by the merits</u> of the underlying

9    claims. The "Class" includes all ASMs "who were improperly classified as

10   'exempt' employees" because they were not paid "on a 'salary' basis." MPA 2:6-9.

11   Similarly, the "Training Class" includes all ASMs "who were improperly classified

12   as 'exempt' employees" during "the ASM's Training Period for the ASM position."

13   *Id.*, at 2:11-14. Whether ASMs were not paid on a salary basis or whether ASMs

14   were improperly classified as exempt during training is the ultimate legal showing

15   that Plaintiffs will have to make to sustain recovery (and is vigorously disputed by

16   Home Depot). Thus, Plaintiffs' definitions are defective because they require the

17   Court to "pass on the merits of the claim . . . in order to tell who was included in

18   the class." *Hagen*, 108 F.R.D. at 64-65. Accordingly, these classes cannot be

19   certified on this basis alone.

20   **IV.    CONCLUSION**

21        Plaintiffs have not met their burden of showing that a class should be

22   certified. Instead, an abundance of evidence demonstrates that a case-by-case

23   liability analysis is required, rendering class certification improper.

24   Dated:    December 28, 2009          Orrick, Herrington & Sutcliffe LLP

25

26                                         /s/ Lynne C. Hermle
                                           LYNNE C. HERMLE
27                                         Attorneys, HOME DEPOT, U.S.A., INC.

28