

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ARCELI MENDOZA, et al., ) | NO. CV 09-05843 SJO (JCx) |
| Plaintiffs, ) | |
| ) | **ORDER DENYING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND DENYING REQUEST FOR ORAL ARGUMENT ON JANUARY 6, 2010** |
| v. ) | |
| HOME DEPOT, U.S.A. INC., et al., ) | [Docket No. 35] |
| Defendant. ) | |

This matter is before the Court on Plaintiffs Arceli Mendoza, et al.'s ("Plaintiffs") Motion for Class Certification, filed November 30, 2009. Defendant Home Depot, U.S.A., Inc. ("Defendant" or "Home Depot") filed an Opposition, to which Plaintiffs replied. The Court found this matter suitable for disposition without oral argument and vacated the hearing set for January 11, 2010. *See* Fed. R. Civ. P. 78(b). For the following reasons, Plaintiffs' Motion is **DENIED**.

I.    BACKGROUND

On July 8, 2009, Plaintiffs filed suit against Defendant in the Superior Court of the State of California in the County of Los Angeles. (*See generally* Compl.) Defendant removed to federal court on August 11, 2009, pursuant to 28 U.S.C. § 1332(d). (*See generally* Notice of Removal.) The Named Plaintiffs, Arceli Mendoza ("Mendoza") and Kyle Diamond ("Diamond"), bring this class action claim on behalf of all Assistant Store Managers ("ASMs") of California Home Depot stores, current and former, from July 8, 2005 to the present (the "Class Period"). (Pls.' Mem. of

P. & A. in Supp. of Pls.' Mot. for Class Certification ("Pls.' Mot.") 2.)  The Named Plaintiffs are California residents who were previously employed by Defendant.  (Pls.' Mot. 1.)

Plaintiffs bring this class action on behalf of two separate classes (the "Two Classes"). First, Plaintiffs allege that ASMs are mis-classified by Defendant as exempt from state overtime pay requirements and so they are entitled to receive overtime pay for all hours worked over 40 hours per work week (the "Class").[1]  Specifically, Plaintiffs contend that ASMs are subject to termination if they choose to work less than 55 hours per week, and so Defendant has violated the salary basis test.[2]  Second, Plaintiffs contend that Defendant mis-classifies training ASMs as executive employees, because training ASMs are not primarily engaged in exempt duties during the unspecified time period in which they train (the "Training Period") for the ASM position (the "Training Class").[3]  (Compl. ¶ 21; Pls.' Mot. 5.)  Specifically, Plaintiffs allege that during the Training Period, "ASMs however, are not expected to, nor do they actually hire or fire employees,"

---

[1]  Plaintiff defines the Class as: All current or former ASMs employed by Home Depot who were improperly classified as 'exempt' employees and deprived of wages by Defendant's failure to pay time-and-a-half for all hours worked in excess of eight (8) hours per day and forty (40) hours per week.  (Compl. ¶ 21.)

[2]  Under California law, an employee is considered to be paid on a "salary basis" and is exempt from overtime where his or her compensation is not subject to a reduction due to variations in quality or quantity of work performed.  (Pls.' Mot. 6-7.)  Because Plaintiff alleges that ASMs are subject to termination if they work less than a designated number of hours per week, Defendant has violated the salary basis test.  (Pls.' Mot. 7.)  The Court notes however, that in *Novak v. Home Depot U.S.A., Inc.*, 259 F.R.D. 106 (D. New Jersey Aug. 27, 2009), the court concluded "that any employee, exempt or non-exempt, may be terminated for not showing up to work is common sense."  *Id.*  In that action, two employees stated that they were required to be at work during their scheduled shifts and that Home Depot had attendance policies.  *Id.*  The court concluded that such evidence "falls far short of establishing a payroll policy that was not a salary" and "does not provide proof regarding a mis-classification of New Jersey Merchandise Assistant Store Managers ("MASMs") exempt status."  *Id.*  Here, Plaintiffs have offered even less proof than the Plaintiffs in *Novak* to support the same argument.

[3]  Plaintiff defines the Training Class as: All current and former ASMs employed by Home Depot who were improperly classified as 'exempt' employees and deprived of wages by Defendant's failure to pay time-and-a-half for all hours worked in excess of eight (8) hours per day and forty (40) hours per week during the ASM's training period for the ASM position.  (Compl. ¶ 21.)

such that "they and other ASMS who went through training were mis-classified as exempt employees by Home Depot." (Pls.' Mot. 6.)

Because exemptions from the overtime laws are considered affirmative defenses, Defendant bears the burden of establishing the exemptions. *Ramirez v. Yosemite Waters Co.*, 85 Cal. Rptr. 2d 844 (Cal. 1999). In order to prevail on this affirmative defense, Defendant must prove that the ASMs and training ASMs are employees:

> (a) whose duties and responsibilities involve the management of the enterprise in which he/she is employed or of customarily recognized subdivision thereof; and
>
> (b) who customarily and regularly direct the work of two or more other employees therein; and
>
> (c) who have the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring or firing and as to the . . . advancement and promotion will . . . be given particular weight; and
>
> (d) who customarily and regularly exercise discretion and independent judgment; and
>
> (e) who primarily engage in duties which meet the test of the exemption . . ."

*Murphy v. Kenneth Cole Productions* 36 Cal. Rptr. 3d 418 (Cal. Ct. App. 2005) (citing Cal. Code Regs., tit. 8, Section 11070, subd. 1(A)(a)-(e)).

Plaintiffs allege the following causes of action: (1) violations of overtime wages under California Labor Law and the regulations promulgated thereunder, brought on behalf of both the Class and Training Class; (2) declaratory judgment, brought on behalf of the Training Class; (3) declaratory judgment, brought on behalf of the Class; (4) unjust enrichment, brought on behalf of both the Class and Training Class; and (5) violations of California's Unfair Competition Law, Business and Professions Code §§ 17200, *et seq.*, brought on behalf of both the Class and

1   Training Class.  (Compl. ¶¶ 34-41, 42-47, 48-52, 53-57, 58-65.)  Plaintiffs now move for class

2   certification.  (*See generally* Pls.' Mot.)

3        Generally, each Home Depot store is managed by one store manager and varying numbers

4   of ASMs.  (Decl. of Art Miner ("Miner Decl.") ¶¶ 3-6.)  Defendant contends that "[d]epending upon

5   a number of factors, including size of the store, hours of operation, sales volume, number of hourly

6   associates, and level of experience of its salaried managers, a store may have between two to

7   seven ASMs.  (Def.'s Mot. 3; Miner Decl. ¶¶ 3-6.)  ASMs are "directly responsible for two to six

8   Home Depot departments and/or the store's operations (*e.g.* receiving and freight, cashiers, phone

9   center, returns and special services).  (Def.'s Mot. 3; Miner Decl. ¶ 7.)  Defendant further alleges:

10                ASM duties vary depending on the unique circumstances of the

11                ASM and his/her store, duties often include (among others)

12                staffing and training employees, checking inventory and ordering,

13                evaluating  departmental  performance,  controlling  loss  of

14                inventory, overseeing safety and security, interviewing applicants,

15                making   hiring   recommendations,   evaluating   employee

16                performance, administering discipline, and overseeing customer

17                service.

18   (Def.'s Mot. 3; Decl. of Carin Jeffries ("Jeffries Decl.") ¶ 3.)

19        By contrast, Plaintiffs allege that "[t]he terms and conditions of employment for ASMs are

20   identical nationwide.  The ASM position was designed at Home Depot Corporate Office," which

21   "exercises centralized control over its stores," and "like all Home Depot employees, [ASMs]

22   operate under detailed rules and regulations, called Standard Operating Procedures ("SOPs")."

23   (Pls.' Mot. 4, 5.)  Plaintiffs argues that even Defendant admits that "all company-wide decisions

24   and policies are made in Atlanta, Georgia."  (Notice of Removal ¶ 13.)

25        Since approximately September 2005, Home Depot has trained ASMs through its "Sure

26   Start" training program, which consists of two components.  (Def.'s Mot. 4.)  "The first is often a

27   one-week classroom session, the content of which covers differing aspects of the ASM position."

28   (Def.'s Mot. 4; Decl. of Yvonne Stewart ("Stewart Decl.") ¶ 9.)  "The second component is in-store

1   training through the use of a 'Sure Start Self Paced Guide' ("Training Guide")."  (Def.'s Mot. 4;

2   Miner Decl. ¶¶ 8, 13.)  The Training Guide consists of thirteen modules that relate to the ASMs'

3   managerial duties, including labor management, safety, and financial management.  (Def.'s Mot.

4   4; Miner Decl. ¶ 9.)  Defendant further states that "[b]ecause the modules so closely relate to the

5   ASM's managerial duties, it is often difficult to distinguish Training Guide activities from 'regular'

6   ASM work."  (Def.'s Mot. 4; Miner Decl. ¶ 9.)  Generally, ASMs are expected to complete the

7   Training Guide within 90 days of becoming an ASM.  (Def.'s Mot. 5.)  Because the Training Guide

8   is self-paced, however, Home Depot anticipates that the time each ASM spends on it per day will

9   vary.  (Def.'s Mot. 5.)  Accordingly, Defendant argues that various factors, including prior

10  experience, the season and day of the week of an ASM's shift, whether a promotion or sale is

11  going on, or the pace of customers, influence the amount of time required to finish the Training

12  Guide.  (Def.'s Mot. 5.)  By contrast, Plaintiffs argue that during the two- to eight-week Training

13  Period, Defendant "expects ASMs to train for the position of ASM . . . rather than actually be ASMs

14  during that time," and that "[i]f [ASMs] are involved at all in tasks, it is to observe or learn the

15  procedures for these management functions."  (Pls.' Mot. 6.)

16  II.   DISCUSSION

17        A.   Judicial Notice

18        Defendant filed a Request for Judicial Notice ("RJN") in support of its Opposition.  The

19  Court may take judicial notice of a fact that is "not subject to reasonable dispute in that it is . . .

20  capable of accurate and ready determination by resort to sources whose accuracy cannot

21  reasonably be questioned."  Fed. R. Civ. P. 201(b)(2); *see also United States v. Ritchie*, 342 F.3d

22  903, 909 (9th Cir. 2003).  Defendant requests that the Court take judicial notice of the following

23  documents: (a) a Department of Labor Opinion dated March 10, 2006; (b) Wage Order 4-2001;

24  and (c) a California Division of Labor Standards Enforcement Opinion Letter 2003.05.23.  (*See*

25  *generally* RJN in Supp. of Def.'s Opp'n to Pls.' Mot. for Class Certification ("Def.'s RJN").)  United

26  States Department of Labor Opinion Letters are properly subject to judicial notice, pursuant to

27  *Louie v. McCormick & Schmick Rest. Corp.*, 460 F. Supp. 2d 1153, 1155 n. 4 (C.D. Cal. 2006).

28  *See United States v. Ritchie*, 342 F.3d at 909 (noting that courts may take judicial notice of public

5

1    records).  Industrial Wage Orders are also properly subject to judicial notice, pursuant to *City of*

2    *Sausalito v. O'Neil,* 386 F.3d 1186, 1224 n. 2 (9th Cir. 2004).  Finally, California Division of Labor

3    Standards Enforcement Opinion Letters are properly subject to judicial notice, pursuant to *Jiminez*

4    *v. Domino's Pizza, Inc.*, 238 F.R.D. 241, 246 (C.D. Cal. 2006).  Accordingly, the Court takes

5    judicial notice of the three above-mentioned documents.

6                    B.      Standard of Review for Class Certification

7                    In order to be certified, a proposed class must be capable of being ascertained, must meet

8    all the requirements of Federal Rule of Civil Procedure 23(a), and must meet at least one

9    requirement of subsection of Federal Rule of Civil Procedure 23(b).  *See* Fed. R. Civ. P. 23(a); *see*

10   Fed. R. Civ. P. 23(b); *see Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997).  Federal

11   Rule of Civil Procedure 23(a) requires that the moving party for class certification satisfy the

12   (a) numerosity, (b) commonality, (c) typicality, and (d) adequacy requirements.  *See Stanton v.*

13   *Boeing Co.*, 327 F.3d 938, 953 (9th Cir. 2003).  The party seeking certification bears the burden

14   of providing facts sufficient to satisfy the requirements of Rule 23.  *Zinser v. Accufix Research*

15   *Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001) (internal citation omitted).  However, "[u]ltimately,

16   it is in the district court's discretion whether a class should be certified."  *In re Static Random*

17   *Access Antitrust Litig.*, No. 07-1819, 2008 U.S. Dist. LEXIS 107523, at *37 (N.D. Cal.

18   Sept. 29, 2008) (internal citation omitted); *see also Dukes v. Wal-Mart, Inc.*, 509 F.3d 1168, 1176

19   (9th Cir. 2007).

20                   In determining whether to grant a motion for class certification pursuant to Rule 23, a court

21   may consider evidence that goes to the requirements of Rule 23, even if such evidence relates

22   to the underlying merits of the case.  *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 509

23   (9th Cir. 1992).  Because "the class determination generally involves considerations that are

24   enmeshed in the factual and legal issues comprising plaintiff's cause of action," *Gen. Tel. Co. of*

25   *Sw. v. Falcon*, 457 U.S. 147, 160 (1982), "a court must often look to evidence beyond the

26   pleadings," *Evans v. IAC/Interactive Corp.*, 244 F.R.D. 568, 574 (C.D. Cal. Apr. 25, 2007) (internal

27   citations omitted).

28                   C.      Rule 23(a) Requirements

                                                   6

1                    1.    Numerosity

2          Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is

3    impracticable." Fed. R. Civ. P. 23(a)(1).  "While Plaintiff need not allege the exact number or

4    identity of class members, mere speculation of the number of class members involved does not

5    satisfy the requirement of Rule 23(a)(1)."  *In re LDK Solar Sec. Litig.*, 255 F.R.D. 519, 525 (N.D.

6    Cal. 2009).  In *Jordan v. County of L.A.*, 669 F.2d 1311, 1319 (9th Cir. 1982), the Ninth Circuit

7    determined that a class consisting of 100 was sufficient.  *See In re Brokerage Antitrust Litig.*, 579

8    F.3d 241, 273 (3d Cir. 2009) (holding that the numerosity requirement is easily satisfied when

9    numbers exceed 40, and particularly when those exceed 100).  Here, Plaintiffs allege that there

10   "are hundreds if not thousands of potential class members."  (Compl. ¶ 27; Pls.' Mot. 9-10.)

11   Defendant does not contest that numerosity is satisfied.   In fact, in its Notice of Removal

12   Defendant admitted that there may be "more than 100 individuals who qualify as current or former

13   ASMs."  (See Notice of Removal ¶ 7.)  Given the large number of potential plaintiffs, the Court

14   finds that the numerosity requirement of Rule 23(a) is readily satisfied.  *See Dukes*, 509 F.3d at

15   1177.

16                   2.    Commonality

17         Rule 23(a)(2) requires that "there are questions of law or fact common to the class . . . ."

18   Fed. R. Civ. P. 23(a)(2).  This commonality requirement is "construed permissively," and "all

19   questions of fact and law need not be common to satisfy the rule."  *Hanlon v. Chrysler Corp.*, 150

20   F.3d 1011, 1019 (9th Cir. 1998).  Rather, "the existence of shared legal issues with divergent

21   factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal

22   remedies within the class."  *Dukes*, 509 F.3d at 1177 (quoting *Hanlon*, 150 F.3d at 1019); *see also*

23   *Parra v. Bashas', Inc.*, 536 F.3d 975, 978 (9th Cir. 2008).

24         Plaintiffs allege that the claims of "the members of the [Two] Classes arise from the same

25   core legal questions and operative facts."  (Pls.' Mot. 11.)  Specifically, Plaintiffs assert that

26   members of the Two Classes share the following questions of fact and law:

27                    (1) whether [Defendant's] policy and practice of classifying ASMs as

28                        exempt from overtime, during training and as working ASMs and

                                                  7

1  [D]efendant's policy and practice of failing to pay overtime to ASMs

2  violates applicable state laws;

3  (2) whether [Defendant's] corporate policy requires ASMs to work in

4  excess of 40 hours per week without compensating the employees at

5  time-and-a-half for all hours worked beyond 40 hours;

6  (3) and whether [Defendant's] conduct is willful and purposeful.

7  (Pls.' Mot. 11.)   By contrast, Defendant argues that Plaintiffs fail to satisfy the commonality

8  requirement because "the experiences of ASMs vary extensively in each and every way that would

9  be essential to the proof of non-exempt status here, including the means by which training occurs,

10  when and how ASM duties are intermixed with the training experiences, and the variation that

11  exists within those duties themselves."  (Def.'s Mot. 17.)

12  The Court does not deny that ASM duties may vary from store to store, but these variations

13  do not undercut Plaintiffs' argument that the putative class members share legal issues and

14  several factual questions.  Indeed, "[t]he existence of shared legal issues with divergent factual

15  predicates is sufficient" to satisfy the commonality requirement.  *Hanlon*, 150 F.3d at 1019.

16  Accordingly, the Court finds that because there are questions of law and fact common to the

17  members of each of the Two Classes, the commonality requirement of Rule 23(a) is satisfied.

18  3.   Typicality

19  Rule 23(a)(3) requires that "the claims or defenses of representative parties are typical of

20  the claims or defenses of the class," and the plaintiff's claims must be "reasonably coextensive

21  with those of absent class members; they need not be substantially identical."  *Dukes*, 509 F.3d

22  at 1184 (quoting *Hanlon*, 150 F.3d at 1020).  The test for typicality is "whether other members

23  have the same or similar injury, whether the action is based on conduct which is not unique to the

24  named plaintiffs, and whether other class members have been injured by the same course of

25  conduct."  *Hanon*, 976 F.2d at 508 (internal citation omitted).

26  The typicality requirement seeks to determine "whether the named plaintiff's claim and the

27  class claims are so interrelated that the interests of the class members will be fairly and

28  adequately protected in their absence."  *Gen. Tel. Co. of Sw.*, 457 U.S. at 158 n. 13.  Thus, "[t]he

1   purpose of the typicality requirements is to assure that the interest of the named representative

2   aligns with the interests of the class." *Hanon*, 976 F.2d at 508 (internal citations omitted).  In other

3   words, "a court must ensure that the named plaintiffs have incentives that align with those of

4   absent class members so as to assure that the absentees' interests will be fairly represented" and

5   that the absentees' claims will be adequately pursued." *In re Graphics Processing Units Antitrust*

6   *Litig.*, 253 F.R.D. 478, 489-90 (N.D. Cal. 2008) (internal citation and quotations omitted).

7          Plaintiffs contend that "[a]ll [Named Plaintiffs] worked in excess of 55 hours per week as

8   working ASMs.  And [they] were subject to [D]efendant's Termination Policy that [P]laintiffs assert

9   abrogates the salary basis test."  (Pls.' Mot. 13.)  Second, Plaintiffs contend that "[a]ll [Named

10  Plaintiffs] underwent training during the Training Period and worked over 40 hours per week during

11  the Training Period."  (Pls.' Mot. 13.)  Finally, Plaintiffs argue that the Named Plaintiffs have

12  suffered typical injuries because their claims "are based on the same legal theory: that they are

13  not exempt from the overtime pay requirements under California law."  (Pls.' Mot. 13.)  As such,

14  Plaintiffs conclude that the Named Plaintiffs have the same incentive as each class member, to

15  prove Defendant's wrongful conduct underlying the claims.  (Pls.' Mot. 14.)

16         Defendant argues that the typicality requirement is not satisfied because of variations in the

17  work experience of ASMs.  (Def.'s Mot. 18.)  However, the typicality requirement does not require

18  that the representative members be identically situated to all other class members.  *Hanon*, 976

19  F.2d at 508.  In any event, Defendant alleges that Mendoza lacks standing to bring claims on

20  behalf of the Training Class.  (Def.'s Mot. 18.)  Defendant states that "[s]pecifically, pursuant to

21  the four year statute of limitations applicable to the Training Class claims, Mendoza had to

22  complete training after July 8, 2005."  (Def.'s Mot. 18.)  However, Defendant contends that

23  Mendoza trained to be an ASM from December 2002 to February 2003.  (Decl. of Andrea L.

24  Brown in Supp. of Def.'s Opp'n to Pls.' Mot. for Class Certification ("Brown Decl.") Exs. D

25  (Mendoza Dep. 44:14-18, Feb. 2, 2009), E.)  As such, Defendant argues that "Mendoza lacks

26  standing to assert the Training Class claims and is, therefore, not an adequate class

27  representative, [nor does he possess typical claims] of the Training Class."  (Def.'s Mot. 18; *See*

28  *Lewis v. Casey*, 518 U.S. 343, 349 (1996).)

1  Defendant also alleges that Named Plaintiff Diamond admits that his claims are not typical

2  of the Training Class.  (Def.'s Mot. 19.)  Specifically, whereas Plaintiffs allege that "all underwent

3  training during the Training Period and worked over 40 hours per week during the Training Period"

4  (Pls.' Mot. 13), Diamond testifies that the classroom portion of his training ran from approximately

5  8 a.m. to 5 p.m., including a 45 minute to one hour lunch break.  (Brown Decl. Ex. C (Diamond

6  Dep. 29:8-14, Nov. 18, 2009).)  Therefore, Defendant alleges that Plaintiffs' claim that all ASMs

7  worked over 40 hours per week during training is not typical of Diamond.  (Def.'s Mot. 19.)

8  Accordingly, because the Named Plaintiff class representatives do not appear to have claims

9  typical of the Training Class, [the Named] Plaintiffs cannot establish the typicality requirement of

10  Rule 23(a).

11              4.   Adequacy of Representation

12  Rule 23(a)(4) permits class certification only if "the representative parties will fairly and

13  adequately protect the interest of the class."  Fed. R. Civ. P. 23(a)(4); Dukes, 509 F.3d at 1185.

14  "This factor requires: (1) that the proposed representative Plaintiffs do not have conflicts of interest

15  with the proposed class, and (2) that Plaintiffs are represented by qualified and competent

16  counsel."  Dukes, 509 F.3d at 1185 (citing Hanlon, 150 F.3d at 1020; Molski v. Gleich, 318 F.3d

17  937, 955 (9th Cir. 2003)).  Further, "adequacy of representation may be defeated when litigation

18  of the matter could be overwhelmed by disposition of unique defenses."  Gartin v. S&M NuTec

19  LLC, 245 F.R.D. 429, 434 (C.D. Cal. 2007).

20  Plaintiffs contend that the Named Plaintiffs are adequate representatives of the Two

21  Classes "because there is no antagonism or conflict of interest between them and the members

22  of the Two Classes."  (Pls.' Mot. 15.)  Plaintiffs also contend that the proposed class counsel is

23  experienced and qualified to prosecute this action.  (Pls.' Mot. 14; Squitieri Decl. Exs. I, J.)  "These

24  counsel have successfully prosecuted numerous complex employment and/or class actions

25  throughout the United States, and have extensive experience in the successful prosecution of this

26  type of litigation."  (Pls.' Mot. 14.)  Defendant does not contest this.  (See generally Def.'s Mot.)

27  The Court is satisfied that Class counsel will adequately represent the proposed class based on

28  its competency and qualifications.

1    By contrast, Defendant contends that Mendoza is an inadequate class representative
2    because she has been unwilling to appear for deposition, despite Defendant's alleged flexibility
3    in scheduling, and so demonstrates that serving as a class representative is not a priority of hers,
4    and that she is not committed to prosecuting this action "completely and vigorously," as is required
5    by law.  *See* Def.'s Mot. 8; Brown Decl. Ex. E ; *see Lerwill v. Inflight Mot. Pictures, Inc.*, 582 F.2d
6    507, 512 (9th Cir. 1978) (holding that class representatives must demonstrate an ability to
7    prosecute the action completely and vigorously).

8    Because Mendoza has not demonstrated a commitment to completely and vigorously
9    prosecute this action, Rule 23(a)(4) is not satisfied as it relates to her.  Accordingly, the four
10   prerequisites of Rule 23(a) have not been satisfied by Plaintiffs. Fed. R. Civ. P. 23(a); *see Hanlon*,
11   150 F.3d 1019-1120.

12       D.    Rule 23(b) Requirements

13           1.    Predominance

14   The first requirement for class certification pursuant to Rule 23(b) "is that the questions of
15   law or fact common to all members of the class predominate over any questions affecting only
16   individual members." Fed. R. Civ. P. 23(b)(3); *see Amchem Prods.*, 521 U.S. at 623.  "The Rule
17   23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant
18   adjudication by representation."  *Id.* at 623.  "Rule 23(b)(3) focuses on the relationship between
19   the common and individual issues." *Hanlon*, 150 F.3d at 1022. "When common questions present
20   a significant aspect of the case and they can be resolved for all members of the class in a single
21   adjudication, there is clear justification for handling the dispute on a representative rather than on
22   an individual basis."  *Id.*  As such, "[w]hen one of more of the central issues in the action are
23   common to the class and can be said to predominate, [a class action] will be considered proper
24   . . . even though other matters will have to be tried separately."  *Gartin v. S & M Nutec, LLC*, 245
25   F.R.D. 429, 435 (C.D. Cal. 2007) (internal citation omitted).  Plaintiffs argue that predominance
26   may be found here because of: (1) Home Depot's uniform policy of classifying all ASMs in training
27   and after, as exempt; (2) Home Depot's alleged uniform training practices and policies; (3) Home

28

Depot's alleged termination policy; and (4) Plaintiffs' challenge to the alleged policies set forth in (1)-(3).  (Pls.' Mot. 17-18.)

Principally, Plaintiffs contend that common issues predominate because Defendant classifies ASMs and training ASMs as exempt.  However, the Ninth Circuit has confirmed that although a uniform policy may suggest some degree of homogeneity among employees, "it does nothing to facilitate common proof on the otherwise individualized issues."  *In re Wells Fargo Home Mortgage Overtime Pay, Inc.*, 571 F.3d 959 (9th Cir. 2009).  As such, the Court concludes that the ASMs' and training ASMs' exempt status does not, by itself, indicate that common issues predominate.  *Id.*

By contrast, reliance on *Sepulveda v. Wal-Mart Stores, Inc.,* 237 F.R.D. 229 (C.D. Cal. 2006) *rev'd* in part, *aff'd* in part, 275 Fed. Appx. 672 (9th Cir. 2008) and the *In re Home Depot Overtime Cases[4]* is appropriate to show that ASMs and training ASMs had unique and different experiences.  *Home Depot Overtime I*, 2006 WL 330169 *1.  In *Sepulveda*, the court found that individual questions predominated over common issues because of the "voluminous evidence that there actually was a great deal of variance in AM [Assistant Manager] duties . . . AM duties varied based on the characteristics of the store, its workforce, and the surrounding community."  *Id.* at 249.  Similarly, in the *Home Depot Overtime Cases*, the courts denied class certification to a class of all Merchandising Assistant Store Manager ("MASMs") in California alleging that they were mis-classified as employees exempt from receiving overtime.

In *Home Depot Overtime I*, the court rejected the argument that SOPs set forth "precise operations, policies, and procedures, which are to be followed by all Home Depot employees in every store."  Pls.' Mot. 4; *Home Depot Overtime I*, 2006 WL 330169 at *1.  The court concluded that such SOPs do not ensure uniformity in how ASMs perform their jobs because "[t]he reality is considerably different . . . in many ways, each store is unique . . . [t]he nature of the work

---

[4]  Like the court in *Novak*, this Court acknowledges the predominance and superiority findings made in *In re Home Depot Overtime Cases*, No. JCCP4229, 2006 WL 330169 (Cal. Ct. App. 2006) ("*Home Depot Overtime I*"), *aff'd*, No. E040215, 2007 WL 4128093 (Cal. Ct. App. 2007) ("*Home Depot Overtime II*") (collectively, "*Home Depot Overtime Cases*").

changes from department to department as well." *Id.* at *3.  Here, Plaintiffs have offered no compelling evidence to suggest that the SOPs provide uniformity for the ASMs.  Instead, Plaintiffs have only submitted a table of contents from an SOP, which is insufficient to show a comprehensive uniform policy, particularly in light of the *Home Depot Overtime Cases*.

Plaintiffs also rely on excerpts from a Training Guide to suggest a uniform policy, but which is something that even Diamond does not recognize.  (Brown Decl. Ex. C.)  In fact, Diamond contends that he only did "some work" in it.  (Brown Decl. Ex. C, Diamond Dep. 40:2-16, Nov. 18, 2009.)  Accordingly, this Training Guide is different than those formal policies at issue in the cases relied upon by Plaintiffs.  *See Cruz v. Dollar Tree Stores, Inc.* No. 7-02050 SC, 2009 WL 1458032, *8 (N.D. Cal. May 26, 2009) (defendant's uniform policy required employees to certify what they had spent most of their time on each week); *see also Wright v. Linkus Enters., Inc.*, 259 F.R.D. 468, 471 (E.D. Cal. 2009).  As such, because there is no uniform policy or standard operating procedure upon which all ASMs and training ASMs rely, it is likely that each ASM's and training ASM's experience is unique.

Moreover, in order to determine whether an exemption applies to an ASM or training ASM, the factfinder must analyze that particular employee's duties performed.  As Defendant argues, "[s]ome ASMs perform work that is directly related to the general business operations of Home Depot, such as inventory management, scheduling of employees, bookkeeping, safety compliance, and training and forecast analysis." (Def.'s Mot. 12.)  The court in *Novak* concluded that "the duties of a MASM who manages the same department at different stores vary, due to differences among stores." *Novak*, 259 F.R.D. 106.  The duties of ASMs and training ASMs are no different.  Isaac Fratini, an ASM at the Home Depot store in Carmichael, California explains:

> During my tenure at Home Depot, I have worked at five different stores and each store is different.  Part of my duties as an ASM is dealing with the unique issues of that store.  For example, the Carmichael store is over 21 years old and is located in a residential neighborhood.  As a result, from time to time I have

1        to respond to neighbors' complaints about noise coming from the

2        Home Depot store.

3   (Decl. of Isaac Fratini ("Fratini Decl.") ¶ 11.)   Joseph Banan also maintains that his experience

4   training and as an ASM is unique:

5        The Sure Start manual allotted a certain amount of time for each

6        module.   I spent less time on the modules on subjects I was

7        familiar with from my experience at Expo Design Center, such as

8        safety.   However, I spent more time on the modules I was less

9        familiar with like merchandising . . . As a specialty ASM, one of

10       the busiest seasons for my departments is just before the holiday

11       season.   Customers tend to remodel their homes, and purchase

12       new cabinets and appliances in preparation of hosting holiday

13       gatherings.

14  (Decl. of Joseph Banan ("Banan Decl.") ¶¶ 6, 14; *see also* Miner Decl. ¶¶ 11, 13, 17, 18, 19, 22,

15  25.)   Several other declarations of ASMs also reflect that the responsibilities and duties of ASMs

16  and training ASMs vary significantly and depend on a variety of factors.[5]   (*See generally* Decl. of

17  Avinash Maraj ("Maraj Decl."); *see generally* Decl. of Fady Jbeily ("Jbeily Decl.").)   As the court

18  in *Novak* concluded, where there are dissimilarities between the individual ASM's duties, such

19  "dissimilarities must be evaluated on a case-by-case basis."   *Novak*, 259 F.R.D. 106.

20       Accordingly, the Court concludes based on its independent review, and pursuant to the

21  *Home Depot Overtime Cases* and *Novak*, that common issues do not predominate, pursuant to

22  Rule 23(b)(3).

23       2.   Superiority

24       The second requirement for class certification pursuant to Rule 23(b) is that the class action

25  is superior to other methods of adjudication.   *See* Fed. R. Civ. P. 23(b)(3).   In determining whether

26  _____

27       [5]   The Court notes that the evidence offered by Plaintiffs does not provide common proof
    regarding whether the ASMs and training ASMs had uniform responsibilities and duties.   (See
28  generally Pls.' Mot; *see generally* Decl. of Squitieri.)

1   a class action is the superior method, courts must consider the four non-exclusive factors

2   enumerated in Rule 23(b)(3):

3         (A) the class members' interest in individually controlling the

4         prosecution or defense of separate actions; (B) the extent and

5         nature of any litigation concerning the controversy already begun

6         by or against class members; (C) the desirability or undesirability

7         of concentrating the litigation of the claims in the particular forum;

8         and (D) the likely difficulties in managing a class action.

9   *see* Fed. R. Civ. P. 23(b)(3); *see Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1190

10  (9th Cir. 2001). The Supreme Court has explained that the main purpose of the Rule 23(b)(3)

11  class action is to vindicate "the rights of groups of people who individually would be without

12  effective strength to bring their opponents into court at all," such as those whose individual

13  recoveries would be too small to warrant an individual suit." *Amchem Prods., Inc.*, 521 U.S. at

14  617. The first matter is "most relevant where each class member has suffered sizeable damages

15  or has an emotional stake in the litigation." *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180,

16  1190. Likewise, "where damages suffered by each putative class member are not large, this

17  factor weighs in favor of certifying a class action." *Id.*; *Halyey v. Medtronic, Inc.*, 169 F.R.D. 643,

18  652 (C.D. Cal. 1996). Here, Plaintiffs argue that it would be more costly and time consuming for

19  individual class members to file multiple individual suits. Also, to the extent that individual ASMs

20  are entitled to damages, Plaintiffs contend that they are not likely to be large enough to justify

21  multiple independent suits. *See Gentry v. Super. Ct.*, 64 Cal. Rptr. 3d 773 (Cal. 2007).

22        However, in *Home Depot Overtime I*, the court held that because MASMs' responsibilities

23  and duties varied greatly, "Home Depot has a fundamental due process right to raise affirmative

24  defenses as to individual plaintiffs . . . This right to raise affirmative defenses as to individual

25  MASM plaintiffs in conjunction with the individual nature of damages in this case makes it difficult

26  to see how class certification would substantially benefit the court." *Home Depot Overtime I*, 2006

27  WL 330169, at *1. The same may be true in the matter before this Court. There are great

28  variations among ASMs' and training ASMs' job responsibilities and duties from employee to

employee, and store to store.  As such, it is appropriate to provide Defendant the opportunity to raise affirmative defenses with each individual Plaintiff.  *Ramirez v. Yosemite Waters Co.*, 85 Cal. Rptr. 2d 844 (Cal. 1999).

Furthermore, as in *Home Depot Overtime I*, each individual recovery is potentially substantial.  *Home Depot Overtime I*, 2006 WL 330169, at *1.  There, the court explained, "[u]sing Home Depot's conservative 15 hours per week overtime concession, the lowest paid MASM would stand to recover at least $25,000/year, plus interest, penalties, and attorney fees.  In short, an individual MASM does have sufficient incentive to pursue a meritorious claim."  *Id.*  These numbers are applicable to the matter before this Court.  ASMs work 55 hours per week, and some have testified that they work more per week, meaning that they could significantly increase their salaries.  Indeed, ASMs are likely to recover more than MASMs, making the argument even stronger than in *Home Dept Overtime I*.  *Id.*  By contrast, the Training Period necessarily lasted for only several weeks or months, depending on the ASM so that members of the Training Class are not as likely to recover as substantially.   In any event, because individual recovery is potentially significant, class certification may not be a superior method, at least for individuals in the Class.

A class action is not a superior method, particularly in light of the fact that Home Depot should be entitled to raise affirmative defenses to individual plaintiff's claims, and because individual recovery may be potentially substantial, at least for members of the Class.  Accordingly, Plaintiffs have failed to satisfy the elements of Rule 23(b)(3).

### 3.   Certification Under Rule 23(b)(2)

Plaintiffs alternatively seek certification based on Rule 23(b)(2).  However, in order to seek declaratory relief pursuant to Rule 23(b)(2) on behalf of the Two Classes, Plaintiffs must demonstrate a real or immediate threat that they will suffer the alleged harm again.  Moreover, Rule 23(b)(2) is inappropriate because Plaintiffs principally seek monetary damages, not declaratory relief, and Rule 23(b)(2) is "appropriate only where the primary relief sought is declaratory or injunctive." Fed. R. Civ. P. 23(b)(2).  Indeed, Diamond even asserts that his primary

1  intention is to recover unpaid wages he believes is owed to him.  (Brown Decl. Ex. C (Diamond

2  Dep. 11:6-24, Nov. 18, 2009.))   Plaintiffs do not state otherwise in their Motion for Class

3  Certification. (See Pls.' Mot 19-20.) Accordingly, certification under Rule 23(b)(2) is inappropriate.

4       Accordingly, because Plaintiffs have failed to satisfy all of the requirements of Rule 23(a),

5  as well as the requirements of Rule 23(b), Plaintiffs' Motion for Class Certification is DENIED.

6       E.     Request for Oral Argument

7       Because the Court finds that the parties' briefings are sufficient for it to make a

8  determination, Plaintiffs' request for Oral Argument is DENIED.

9  III.   RULING

10      For the foregoing reasons, the Court DENIES Plaintiffs' Motion for Class Certification.  The

11 Class claims are struck.  Plaintiffs' claims may now proceed as individual claims.

12      IT IS SO ORDERED.

13

14 Dated: January 21, 2010

15

16 _____

17                 S. JAMES OTERO
                   UNITED STATES DISTRICT JUDGE

18

19

20

21

22

23

24

25

26

27

28